# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# GREENVILLE DIVISION

| | | |
|---|---|---|
| Porcha D. Givens, as Personal Representative of the Estate of Richard Henry Caldwell, | ) ) ) ) | Case No. _____ |
| Plaintiff, | ) ) ) | **COMPLAINT** |
| v. | ) ) | **(NON-JURY)** |
| Erie Insurance Group, The ERIE, Erie Insurance Exchange, and Empire Capital Logistics, LLC, | ) ) ) ) ) | |
| Defendants. | ) ) | |

COMES NOW the plaintiff, Porcha D. Givens, as Personal Representative of the Estate of Richard Henry Caldwell ("the Estate"), by and through its undersigned counsel, complaining of the defendants, Erie Insurance Group, The ERIE, and Erie Insurance Exchange (collectively, "Erie"), and Empire Capital Logistics, LLC, would allege as follows.

## INTRODUCTION

This case arises out of Erie's failure protect its insured, Irakli Samkharadze. Erie wrote a liability insurance policy that required it to indemnify and defend Samkharadze for an automobile accident for which he is liable. Despite accepting premiums and writing the coverage, Erie abandoned its insured and his victims when tragedy struck. On November 26, 2019, Samkharadze was involved in a fatal automobile accident. While drunk, Samkharadze ran off the road on Interstate 85, hit Richard Henry Caldwell, and killed him. Caldwell left behind two minor children and an adult daughter. Caldwell's estate sued Samkharadze for damages in the Court of Common Pleas for Greenville County, South Carolina. Erie was put on notice of the claim and asked to defend Samkharadze. It declined. Erie never sent Samkharadze a reservation of rights letter and

did nothing to protect its insured.

After learning that Samkharadze's policy with Erie carried liability policy limits of $1 million, the Estate asked Erie to pay its policy limits in exchange for a full release of Samkharadze. The Estate's claim against Samkharadze was worth many times more than the $1 million liability policy limits. Erie declined to pay the policy limits and protect its insured from an excess judgment.

The Estate filed its lawsuit against Samkharadze and filed a motion for summary judgment. The Court granted the motion and referred the matter to a special referee who found the Estate suffered $25 million in actual damages and $8 million in punitive damages. Judgment was entered against Samkharadze for $33 million.

Samkharadze assigned his claims against Erie to the Estate in exchange for the Estate promising not to collect from Samkharadze's personal assets. The Estate demands that Erie pay the $33 million judgment entered against Samkharadze as well as other consequential damages, punitive damages, and attorney fees. Erie is liable to the Estate since it failed to do what it should have done over two years ago: defend its insured, indemnify its insured, protect its insured and the people he harmed, and pay its policy limits to avoid large judgments like the one now entered against Samkharadze.

**THE PARTIES AND JURISDICTION**

1.      The plaintiff personal representative, Porcha Givens, is a citizen and resident of Greenville County, South Carolina.

2.      The Estate of Richard Henry Caldwell was opened in the Probate Court for Greenville County, South Carolina and is a citizen of South Carolina for purposes of jurisdiction and venue before this court.

3. Erie Insurance Company is a publicly traded company organized under the laws of the State of Pennsylvania. Its principal place of business is in Erie, Pennsylvania. Erie Insurance Exchange, an Erie Insurance Company affiliate, is licensed to sell property and casualty insurance in South Carolina pursuant to NAIC No. 26271.

4. Erie Insurance Company is owned by Erie Insurance Exchange and are collectively known as Erie Insurance Group.

5. Empire Capital Logistics, LLC is a limited liability company organized and existing pursuant to the laws of the State of New York. It is a transportation company that operates its vehicles throughout the country, including South Carolina. A vehicle it insured was involved in the subject accident in Greenville County, South Carolina and it is subject to the jurisdiction of this Court.

6. Erie has availed itself of the jurisdiction of the courts in South Carolina and instituted litigation and filed lawsuits in South Carolina within the last five years. In filing those suits, it has asserted that it is organized to do business in South Carolina and does business in South Carolina. It has further asserted that it is authorized to engage in the business of insurance in South Carolina. It has engaged in tortious conduct in South Carolina as described below. Erie is subject to personal jurisdiction in this State and in this Court.

7. The parties are completely diverse. The plaintiff's citizenship for purposes of diversity jurisdiction being South Carolina and the defendants' citizenship for purposes of diversity jurisdiction being Pennsylvania and New York, respectively.

8. The amount in controversy exceeds $75,000.00 and this Court has subject matter jurisdiction over this case pursuant to 28 U.S.C.A. § 1332.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the defendants

are subject to jurisdiction in this district and because a substantial part of the acts or omissions giving rise to the plaintiff's claims occurred in Greenville County, South Carolina.

## THE ACCIDENT

10. The fatal accident giving rise to this case occurred on November 26, 2019.

11. After drinking approximately ten (10) alcoholic beverages and passing out at a local bar, Samkharadze decided to leave the bar while driving a 2020 Jeep.

12. Shortly after leaving the bar, Samkharadze entered Interstate 85 at Pelham Road in Greenville County. A short time later he ran off the side of the road, striking Mr. Richard Henry Caldwell who was changing a tire (hereinafter "the Accident").

13. Caldwell was the father of two minor children, A. Caldwell, age 7, and R. Caldwell, age 6; as well as an adult daughter Porcha Givens. Ms. Givens serves as the Personal Representative of Caldwell's Estate.

14. Samkharadze was charged with reckless homicide and recently pled guilty to that charge.

## THE INSURANCE POLICY

15. Empire Capital Logistics, LLC ("Empire") purchased a commercial automobile insurance policy from Erie. That policy bears Policy No. Q105130726 with effective dates between October 1, 2019 and October 1, 2020 ("the Policy"), attached as **Exhibit A**.

16. The Accident occurred during the Policy period.

17. Empire paid the policy premiums in full to Erie.

18. The Policy listed several Covered Autos under the Policy, including a 2018 Ram ProMaster with VIN No. 3C7WRVLG2JE153013 (the "2018 ProMaster").

19. The 2018 ProMaster is described on the Policy's declarations, attached as **Exhibit**

**B**.

20. The 2018 ProMaster is an Owned Auto under the definition of "Owned Auto" found in the Policy.

21. Prior to the Accident, the 2018 ProMaster needed repairs and service and was taken to the repair shop at Hayes Chrysler Dodge Jeep Ram of Gainesville located at 3115 Frontage Road, Gainesville, GA on November 25, 2019.

22. A temporary substitute automobile was obtained in place of the 2018 ProMaster. That vehicle was a 2020 Jeep with VIN No. 1C4HJXDN7LW115064 (the "2020 Jeep") rented from Enterprise Rent-a-Car.

23. At the time of the subject accident on November 26, 2019, the 2020 Jeep was being temporarily used in place of the 2018 ProMaster.

24. At the time of the Accident, the 2018 ProMaster was unable to be driven for normal use due to breakdown and/or repair and/or servicing.

25. At the time of the Accident, the 2020 Jeep was a Temporary Substitute Auto under the definition of "Temporary Substitute Auto" found in the Policy.

26. The Policy provides $1,000,000.00 of liability coverage for Temporary Substitute Autos.

27. Before November 25, 2019, Samkharadze regularly drove the 2018 ProMaster with the permission of Empire.

28. On November 25, 2019, Samkharadze drove the 2020 Jeep with the permission of Empire.

29. At the time of the Accident, Samkharadze was an Insured under the Policy, driving an insured Temporary Substitute Auto.

30. The Policy was in full force and effect on the date of the Accident.

31. The Policy had never been canceled prior to the date of the Accident.

32. The Policy provided liability coverage to Samkharadze for the accident with Caldwell.

### ERIE'S CLAIM HANDLING AND DENIAL OF CLAIM

33. Erie was timely put on notice of the Accident and claim against Samkharadze.

34. On February 27, 2020, Erie adjuster Cheryl Miceli sent a letter indicating Erie would not defend or indemnify Samkharadze because the Policy was obtained by fraud. A true and accurate copy of the February 27, 2020 letter is attached as **Exhibit C**.

35. Erie adjuster Miceli's letter did not explain or clarify the alleged fraud.

36. On February 28, 2020, Erie adjuster Miceli sent a second letter again denying coverage to Samkharadze. This time Miceli justified the denial on the grounds that Samkharadze did not qualify as an insured under the Policy and that the 2020 Jeep did not qualify as a Temporary Substitute Auto. A true and accurate copy of the February 28, 2020 letter is attached as **Exhibit D**.

37. On July 20, 2020, the Estate sued Samkharadze for wrongful death and survival. That action was filed in the Greenville County Court of Common Pleas and bears case number 2020-CP-23-03411 ("the Underlying Lawsuit"). A true and accurate copy of the lawsuit is attached as **Exhibit E**.

38. After filing the Underlying Lawsuit, the Estate sent Samkharadze's lawyer a copy of the complaint. The Estate requested that: 1) Erie be sent a copy of the Underlying Lawsuit, and 2) Erie tender the Policy's liability limits of $1 million within 30 days in exchange for a full release of its insured, Samkharadze.

39. Samkharadze's lawyer immediately sent a copy of the Underlying Lawsuit to Erie and demanded that they indemnify Samkharadze, assign a lawyer to defend Samkharadze, and pay the Policy's liability limits to protect Samkharadze from personal exposure, which he estimated would exceed $20 million.

40. Erie received the Underlying Lawsuit, demand, and request for payment of its Policy limits.

41. Erie reviewed the Underlying Lawsuit, demand, and request for payment of the Policy limits.

42. Erie did not defend Samkharadze in the Underlying Lawsuit.

43. Erie did not send a reservation of rights letter to Samkharadze reserving its rights to deny coverage for claims made in the Underlying Lawsuit.

44. Erie did nothing to protect Samkharadze.

45. Erie did not attempt to negotiate or pay its Policy limits to the Estate.

46. Instead, Erie allowed the Estate's time limit demand to expire.

47. Because Erie refused to defend, indemnify, or protect Samkharadze, Samkharadze's criminal lawyer, Ryan Beasley, was forced to defend him.

48. Since the Underlying Lawsuit was a case of clear and aggravated liability against Samkharadze, the Estate filed a motion for summary judgment on November 9, 2020. On January 27, 2021, the Court of Common Pleas granting the Estate's motion and determined that the action should be referred to a special referee for entry of judgment pursuant to *South Carolina Rules of Civil Procedure*, Rule 56. Robert B. Goings, Esq. was appointed special referee by order dated January 28, 2021.

49. After receiving evidence related to the Estate's damages, Referee Goings entered a

final order of judgment on April 26, 2021 finding that the Estate was entitled to $25 million in damages on its wrongful death claim and additional $8 million in punitive damages.

50. On May 17, 2021, the judgment against Samkharadze was entered into the judgment roll of the Greenville County Clerk of Court. A true and accurate copy of the judgment is attached as **Exhibit F**.

51. On February 2, 2022, Samkharadze and the Estate executed an Assignment and Covenant Not to Execute. Under its terms, the Estate agreed not to pursue Samkharadze's personal assets in satisfaction of the judgment in exchange for Samkharadze assigning all of his claims against Erie to the Estate. A true and accurate copy of the assignment is attached as **Exhibit G.**

52. Having been assigned Samkharadze's claims against Erie, the Estate asserts the following causes of action:

## FOR A FIRST CAUSE OF ACTION
**(Declaratory Judgment against All Defendants)**

53. The Estate realleges all prior allegations as if fully set forth herein.

54. An actual justiciable controversy exists between the Estate, Erie, and Empire entitling the parties to a declaratory judgment pursuant to 28 U.S.C.A. § 2201.

55. The Estate seeks a determination that Samkharadze was an insured under the Policy.

56. The Estate seeks a determination that the 2020 Jeep was a Temporary Substitute Auto under the Policy at the time of the Accident.

57. The Estate seeks a determination that the Accident was a Covered Loss under the Policy.

58. The Estate seeks a determination that Erie was and is obligated to indemnify and defend Samkharadze for all claims arising out of the Accident.

8

59. The Court should enter judgment resolving the controversy between the parties finding Samkaharadze was an insured; the 2020 Jeep was a Temporary Substitute Auto; the Accident was a Covered Loss; and Erie was and is obligated to indemnify and defend Samkharadze for all claims arising out of the Accident.

<b><u>FOR A SECOND CAUSE OF ACTION</u></b><br><b>(Breach of Contract as to Erie)</b>

60. The Estate realleges all prior allegations as if fully set forth herein.

61. The Policy is a contract.

62. Empire, as named insured under the Policy, fully performed its contractual duties to Erie.

63. Erie wrote the Policy.

64. In return for the insured's timely premium payments and compliance with all the provisions of the Policy, Erie agreed to provide the coverages purchased by the insured.

65. The coverages provided under the Policy include liability protection.

66. Under the Policy, Erie agreed to pay all sums anyone it protects legally must pay as damages caused by an accident covered by the Policy.

67. Automobile liability insurance is regulated in all fifty states.

68. The Policy cannot violate the automobile liability statutes in the state in which it is written.

69. If the Policy violates the automobile liability statute in the state in which it is written that portion of the Policy is not enforceable.

70. To be covered, the Accident must arise out of the ownership, maintenance, use, loading, or unloading of an auto Erie insures.

71. The 2018 ProMaster qualifies as an Owned Auto under the Policy since it is

described in the Policy's declarations.

72. The 2018 ProMaster was unable to be driven for normal use on the date of the Accident due to breakdown, repair, and/or servicing.

73. At the time of the Accident, the 2020 Jeep was rented from Enterprise Rent-a-Car and temporarily used in place of the 2018 ProMaster.

74. The 2020 Jeep, therefore, qualifies as a Temporary Substitute Auto under the Policy.

75. The 2020 Jeep involved in the accident was owned by Enterprise Rent-a-Car and not Empire Capital Logistics, LLC.

76. Samkharadze was using the 2020 Jeep with Empire's permission.

77. Samkharadze was a Permissive User of the 2020 Jeep.

78. Erie is required to indemnify and defend all Permissive Users of autos it insures under the Policy.

79. Samkharadze was a Permissive User of a Covered Auto under the Policy at the time of the Accident and was, therefore, entitled to indemnity and defense in the Underlying Action from Erie.

80. Erie breached its contract by failing to indemnify and defend Samkharadze.

81. Had Erie complied with the terms of the Policy, it could have protected Samkharadze from any judgment being entered against him by paying its $1 million policy limits.

82. Failure to pay the Policy's $1 million in liability limits resulted in judgment being entered against Samkharadze for $33 million. The judgment against Samkharadze is a direct and consequential result of Erie's breach of the insurance contract.

## FOR A THIRD CAUSE OF ACTION
### (Negligence and Bad Faith as to Erie)

83. The Estate realleges all prior allegations as if fully set forth herein.

84. Erie owed a duty to investigate the Estate's claim against Samkharadze.

85. Erie owed a duty to defend and indemnify Samkharadze in the Underlying Lawsuit pursuant to the Policy.

86. Erie owed a duty of good faith and fair dealing not only in the handling of the Estate's claim against Samkharadze, but also to defend Samkharadze, indemnify him, protect him from any judgment, and pay liability claims made against him if reasonable to do so under the circumstances and where a judgment against Samkharadze was likely to exceed the available liability Policy limits.

87. Erie did none of these things.

88. Erie also did not explain its claimed coverage defenses, the purported fraud that Erie claimed voided coverage, or why Erie claimed Samkharadze did not qualify as an Insured. These are additional instances of bad faith.

89. When an insurer acts in bad faith or unreasonably in processing a claim under an insurance contract, an insured can recover consequential damages in a tort action for bad faith.

90. Samkharadze is entitled to consequential damages because of Erie's bad faith and unreasonable conduct.

91. Damages for bad faith are not limited by the insurance contract.

92. Erie's bad faith resulted in consequential damages including, but not limited to, the $33 million judgment against its insured, Samkharadze.

93. Erie's conduct was also willful and in reckless disregard of Samkharadze's rights, entitling the Estate to punitive damages against Erie, together with an award of attorneys' fees.

**WHEREFORE**, the Estate respectfully requests that the Court:

1. Enter a judgment finding that Samkharadze was an Insured under the Erie Policy issued to Empire at the time of the Accident.

2. Find that Erie breached its insurance contract and its duty of good faith in handling the above-referenced claim;

3. Enter judgment against Erie for $33 million;

4. Enter judgment against Erie for pre-judgment interest, post-judgment interest, attorneys' fees, and punitive damages.

Respectfully submitted,

/s/Adam C. Bach
Adam C. Bach (Federal Bar # 9877)
Eric R. Tonnsen (Federal Bar # 9898)
R. Hudson Smith (Federal Bar # 12381)
ELLER TONNSEN BACH, LLC
1306 S. Church Street
Greenville, SC  29605
Telephone: (864) 236-5013
Facsimile: (864) 312-4191
abach@etblawfirm.com
etonnsen@etblawfirm.com
hsmith@etblawfirm.com

-   and   -

/s/James Walter Fayssoux, Jr.
James Walter Fayssoux, Jr. (Federal Bar # 7449)
Geoffrey William Gibbon (Federal Bar # 10056)
FAYSSOUX & LANDIS ATTORNEYS AT LAW, P.A.
209 E. Washington Street
Greenville, SC  29601
wally@fayssouxlaw.com
geoff@fayssouxlaw.com

Attorneys for Plaintiff

March 14, 2022

Greenville, South Carolina