IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

Porcha D. Givens, as Personal )
Representative of the Estate of Richard )
Henry Caldwell, )          C.A. No. 6:22-00842-HMH
 )
                          Plaintiff, )
 )               **OPINION & ORDER**
            vs. )
 )
Erie Insurance Company, )
Erie Insurance Group, The ERIE, )
Erie Insurance Exchange, and )
Empire Capital Logistics, LLC, )
 )
                          Defendants. )

This matter is before the court on the Defendants' Erie Insurance Company ("EIC"), Erie

Insurance Group ("EIG"), The ERIE, and Erie Insurance Exchange ("The Exchange")

(collectively, "Erie Defendants") motion to dismiss pursuant to Rules 12(b)(2) and 12(b)(6) of

the Federal Rules of Civil Procedure. In the alternative, the Erie Defendants move to transfer

the action to the United States District Court for the Northern District of New York pursuant to

the first-to-file rule or 28 U.S.C. §§ 1406, 1631, or 1404(a). After a thorough review, the court

grants in part and denies in part the Erie Defendants' motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

As set forth in the amended complaint, Porcha D. Givens, as Personal Representative of

the Estate of Richard Henry Caldwell ("the Estate") seeks a declaration whether certain policies

1

of insurance issued by the Erie Defendants[1] to Empire Capital Logistics, LLC ("Empire")

required the Erie Defendants to indemnify and defend Irakli Samkharadze ("Samkharadze"), a

Georgia resident,[2] for all claims arising out of an automobile accident that occurred on

November 26, 2019 ("the Accident") in Greenville County, South Carolina, which resulted in

the death of Richard Henry Caldwell ("Caldwell").  (Am. Compl. ¶¶ 10,12, 53-59, ECF No. 21.)

EIC, a Pennsylvania corporation with its principal place of business in Pennsylvania,

issued Empire, a New York limited liability company, a commercial automobile policy with

effective dates between October 1, 2019 and October 1, 2020 ("the Policy").  (Id. ¶¶ 4-5, 15,

ECF No. 21); (Id. Exs. A & B (Policy), ECF Nos. 21-2, 3.)  The Policy was issued in New York

and lists multiple insured motor vehicles, including a 2018 Ram ProMaster, which the Estate

alleges was regularly driven by Samkharadze with the permission of Empire.  (Id. ¶¶ 18, 27,

ECF No. 21.)

On November 25, 2019, the day before the Accident, the 2018 ProMaster needed repairs

and was in a repair shop in Gainesville, Georgia.  (Id. ¶ 21, ECF No. 21.)  Because the 2018

ProMaster was unavailable, Samkharadze obtained a 2020 Jeep from Enterprise Rent-a-Car with

Empire's permission.  (Id. ¶¶ 22, 28, ECF No. 21.)  The Estate alleges that the 2020 Jeep is

covered under the Policy because it qualifies as a "Temporary Substitute Auto"[3] as that term is

---

[1] Throughout the amended complaint, the Estate refers to the Erie Defendants as "Erie" without clarifying which allegations are directed at each individual defendant.  In addition, the Estate alleges that "The Erie and Erie Insurance Group are fictitious entities comprising a family of companies . . . ."  (Am Compl. ¶ 4, ECF No. 21.)

[2] (Am. Compl. Ex. E (Underlying Action ¶ 3), ECF No. 21-6.)

[3] "These are autos not owned by you being temporarily used in place of owned autos. The latter must be unable to be driven for normal use due to breakdown, repair, servicing, loss

2

defined in the Policy.  (Id. 25, ECF No. 21); (Id. Ex. A (Policy 7), ECF No. 21-2.)

After being notified of the Accident, EIC denied coverage in a letter sent to Empire dated February 27, 2020 and refused to defend and indemnify Samkharadze because it claimed the Policy was obtained by fraud.  (Am. Compl. ¶ 34, ECF No. 21); (Id. Ex. C (1st Letter), ECF No. 21-4.)  The following day, EIC sent a second letter to Empire stating that the 2020 Jeep was not covered under the Policy because it "does not meet the definition of an auto we insure[,] [and] [t]he renter of the 2020 Jeep through Enterprise, Kishvardi Bakradze, and the driver of the vehicle, [] Samkharabze [sic], were not covered persons under this policy."  (Id. Ex. D (2nd Letter), ECF No. 21-5.)  Subsequently, the Estate sued Samkharadze for wrongful death in South Carolina state court on July 20, 2020.  (Id. Ex. E (Underlying Action ), ECF No. 21-6.)

The Estate requested that Samkharadze's lawyer send a copy of the complaint in the Underlying Action to EIC and request that "Erie tender the Policy's liability limits of $1 million within 30 days in exchange for a full release of its insured, Samkharadze."  (Id. ¶ 38, ECF No. 21.)  The Estate alleges that Samkharadze's lawyer complied with this request and "Erie refused to defend, indemnify, or protect Samkharadze . . . ."  (Am. Compl. ¶¶ 40-47, ECF No. 21.)  As a result, Samkharadze was represented in the Underlying Action by his criminal lawyer.  (Id. ¶ 47, ECF No. 21.)  The case was referred to a special referee pursuant to Rule 53 of the South Carolina Rules of Civil Procedure.  (Id. Ex. F (Final Order J. 2), ECF No. 21-7.)

Ultimately, after a hearing on the Estate's motion for summary judgment, the special referee found Samkharadze liable and awarded the Estate thirty-three million dollars in damages in an order dated April 26, 2021.  (Id. Ex. F (Final Order J.), ECF No. 21-7.)  Thereafter,

---

or destruction."  (Am. Compl. Ex. A (Policy 7), ECF No. 21-2.)

Samkharadze assigned any claims he might have against Erie Insurance Company to the Estate in exchange for a covenant not to execute.  (Id. Ex. G (Assignment), ECF No. 21-8.)

The Estate filed the instant action on March 14, 2022, asserting claims for declaratory judgment, breach of contract, negligence, and bad faith.  (Compl., generally, ECF No. 1.)  On May 11, 2022, Defendant EIC filed a declaratory judgment action in the Northern District of New York against Empire, the Estate, and Samkharadze, seeking a declaration that "(1) there was never a valid contract of insurance between Erie Insurance Company and Empire Capital Logistics, LLC; (2) the Policy issued to Empire Capital Logistics is void ab initio pursuant to New York Insurance Law Section 3105; and (3) Erie Insurance Company had no obligation to defend or indemnify Irakli Samkharadze in the Underlying Action."  (Mot. Dismiss Ex. A (N.D.N.Y. Compl. 14, C.A. No. 5:22-0490-MAD-ATB, ECF No. 1), ECF No. 26-3.)

On May 13, 2022, the Estate filed an amended complaint asserting the same claims, and adding EIC as a defendant.  (Am. Compl., ECF No. 21.)  On May 27, 2022, the Erie Defendants filed the instant motion to dismiss the amended complaint for failure to state a claim as to Defendants EIG, The ERIE, and the Exchange and for lack of personal jurisdiction as to EIC, or in the alternative, to transfer venue to the Northern District of New York as to EIC.  (Mot. Dismiss, ECF No. 26.)  On June 10, 2022, the Estate filed a response in opposition to the Erie Defendants' motion.  (Resp. Opp'n, ECF No. 27.)  The Erie Defendants filed a reply on June 24, 2022.  (Reply, ECF No. 30.)  The motion is now ripe for consideration.

## II. DISCUSSION OF THE LAW

### A. Dismissal for Failure to State a Claim

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks omitted). While a complaint "does not need [to allege] detailed factual allegations," pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

Under limited circumstances, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. Goldfarb v. Mayor & City Council of Baltimore, 791 F.3d 500, 508 (4th Cir. 2015). A court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits, [a]nd . . . document[s] submitted by the movant that [are] not attached to or expressly incorporated in a complaint, so long as the document[s] [are] integral to the complaint and there is no dispute about the[ir] [] authenticity." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016) (citations omitted). "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to [Rule 10(c) of the Federal Rules of Civil Procedure], the exhibit prevails." Fayetteville Inv. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991).

5

Further, while the court accepts plausible factual allegations made in the complaint as true and considers those facts in the light most favorable to a plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt's Inc. v. J.D. Assoc's, LP, 213 F. 3d 175, 180 (4th Cir. 2000). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 678 (internal quotation marks omitted). Stated differently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

The Estate attached a copy of the Policy to its amended complaint and relies on the Policy provisions in setting forth its claims and responding to the Erie Defendants' motion to dismiss. (Am. Compl. Exs. A & B (Policy & Decls.), ECF Nos. 21-2, 3.) Accordingly, the court will consider those documents because they are integral to the complaint and attached as exhibits. Goines, 822 F.3d at 166; see also Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

### 1. Capacity to be Sued

As an initial matter, the Erie Defendants argue that The ERIE and Erie Insurance Group are not proper defendants because "they are not legal entities, do not issue insurance policies, and did not issue the Policy involved in this action." (Mem. Supp. Mot. Dismiss 6, 12, ECF No. 26-1) ("Because they are not legal entities, neither has the capacity to institute litigation, sell insurance, conduct business or commit torts in any state . . . .") The Estate has also alleged that

6

"[t]he Erie and Erie Insurance Group are fictitious entities comprising a family of companies including . . . Erie Insurance Company, who has represented that they were issuers of an insurance policy issued to [] Empire Capital Logistics, LLC."  (Am. Compl. ¶ 4, ECF No. 21.)

For parties other than an individual or corporation, capacity to suit is determined by "the law of the state where the court is located[.]"  Fed. R. Civ. P. 17(b)(3).  Under South Carolina law, "[a]ll unincorporated associations may be sued and proceeded against under the name and style by which they are usually known without naming the individual members of the association."  S.C. Code Ann. § 15-5-160.  As explained by the South Carolina Court of Appeals, "[a]n unincorporated association is a body of individual persons organized without a charter for the prosecution of some common enterprise."  Graham v. Lloyd's of London, 371 S.E.2d 801, 804 (S.C. Ct. App. 1988).  S.C. Code Ann. § 15-5-160 permits a plaintiff to "bring the members of an association before the court without naming and serving process upon them individually."  Id.; see also Fowler v. Beasley, 472 S.E.2d 630, 633 (S.C. 1996) ("[A]n unincorporated association may be sued under the name by which it was generally known without naming the individual members of the association.").

Importantly, S.C. Code Ann. § 15-5-160 only provides a procedure for bringing parties before the court, and any "liability of the members of the association, if any, is determined by the applicable substantive law."  Graham, 296 S.C. at 256.  The Erie Defendants admit that The ERIE is a trade name and Erie Insurance Group "is a fictitious name used to refer to various Erie entities collectively, not individually."  (Mem. Supp. Mot. Dismiss 12, ECF No. 26-1.)  Accordingly, The ERIE and EIG, as unincorporated associations, can be sued.

7

**2. Breach of Contract Claim**

The Erie Defendants also argue that the claims against The ERIE, EIG, and The Exchange should be dismissed because they did not issue the Policy to Empire.  (Id. 5, ECF No. 26-1.)  The Erie Defendants assert that "New York law applies to the coverage issues because the Policy was issued and delivered in New York to [Empire,] a purported New York limited liability company."  (Id. 6 n. 5, ECF No. 26-1.)  While the Estate asserts that South Carolina substantive law applies to its bad faith claim, it does not directly dispute that New York law governs the formation and interpretation of the Policy.  (Resp. Opp'n 24-25, ECF No. 27.)  Instead, it baldly asserts that "South Carolina law will apply to Plaintiff's claims," before addressing South Carolina law only as it pertains to the bad faith claim.  (Id. 24, ECF No. 27.)  In regard to the breach of contract claim, the Estate merely avers that "even assuming New York law applies to the insurance contract, and even assuming fraud occurred when Empire obtained the policy, Erie may not void the policy ab initio . . . ."  (Id. 25, ECF No. 27.)

"A federal court sitting in diversity is required to apply the substantive law of the forum state, including its choice-of-law rules."  Francis v. Allstate Ins. Co., 709 F.3d 362, 369 (4th Cir. 2013).  South Carolina is the forum state and, accordingly, this court will look to its choice-of-law rules.  Under South Carolina's traditional choice-of-law rules, the "validity and interpretation [of a contract] is governed by the law of the place where it is made, the lex loci contractus."  Livingston v. Atlantic Coast Line R. Co., 180 S.E. 343, 345 (S.C. 1935).  The Policy was issued in New York, therefore, the court will apply New York's substantive law to the breach of contract claim.  (Am. Compl. Exs. A & B (Policy & Decls.), ECF Nos. 21-2, 3.)

To state a claim for breach of contract under New York law, a plaintiff must allege "(1) formation of a contract between plaintiff and defendant; (2) performance by plaintiff; (3) defendant's failure to perform; and (4) resulting damage."  Clearmont Prop., LLC v. Eisner, 872 N.Y.S.2d 725, 728 (N.Y. App. Div. 2009) (citation omitted).

The plain language of the Policy provides that "[the] contract [is] between YOU and The ERIE . . . ."  (Am. Compl. Ex. A (Policy 5), ECF No. 21-2) (emphasis in original).  "**[W]e**," "**us**," and "**The ERIE**" is defined in the Policy as "Erie Insurance Company or Erie Insurance Company of New York, whichever is stated on the Declarations."  (Id. Ex. A (Policy 6), ECF No. 21-2) (emphasis in original).  Erie Insurance Company is listed on the first page of the Declarations.[4]  (Id. Ex. B (Decls. 2), ECF No. 21-2.)  Erie Insurance Company of New York, a party not named in this lawsuit, does not appear anywhere in the Declarations.  Accordingly, the court finds that the plain and unambiguous language of the Policy demonstrates that it was issued by EIC.  Therefore, the court concludes that it is implausible to allege that The ERIE, EIG, and The Exchange are parties to the Policy.  Comm. Builders, Inc., 936 F.2d at 1465.  Based on the foregoing, the breach of contract claims against the ERIE, EIG, and The Exchange are dismissed for failure to state a claim.

---

[4] The Estate argues that the "Declarations" is a "separate document" and that having to review the contents of the Declarations "only further muddies the water by giving no clear indication which entity is issuing the Policy."  (Resp. Opp'n 28, ECF No. 27.)  However, the first page of the Policy, and the same section cited by the Estate, provides that "[t]his important contract . . . consists of this policy with coverage agreements, limitations, exclusions and conditions, a **Declarations**, plus any endorsements."  (Am. Compl. Ex. A (Policy 2), ECF No. 21-2) (emphasis added); (Resp. Opp'n 27, ECF No. 27.)  In addition, the court notes that the assignment of rights clearly states that "Assignor was operating an insured vehicle under an automobile liability insurance policy issued by Erie Insurance Company . . . ."  (Am. Compl. Ex. G (Assignment 2), ECF No. 21-8.)

### 3. Bad Faith Claim

The Estate asserts that South Carolina law governs the bad faith claim because "the loss

to Samkharadze occurred in South Carolina where the judgment was entered against him . . . ."

(Resp. Opp'n 24, ECF No. 27.)  "The elements of an action for bad faith refusal to pay benefits

under an insurance contract include: (1) the existence of a mutually binding contract of

insurance between the plaintiff and the defendant; (2) refusal by the insurer to pay benefits due

under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of

an implied covenant of good faith and fair dealing arising on the contract; (4) causing damage to

the insured."  Cock-n-Bull Steak House, Inc. v. Generali Ins. Co., 466 S.E.2d 727, 730 (S.C.

1996).  Accordingly, as The ERIE, EIG, and The Exchange were not parties to the Policy

between EIC and Empire, the bad faith claim against them is dismissed.[5]

### 4. Declaratory Judgment Claim

The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that district courts "may

declare the rights and other legal relations of any interested party seeking such declaration[.]"

Two conditions must be satisfied for the Court to have jurisdiction to issue a declaratory

judgment.  White v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 913 F.2d 165, 167 (4th

Cir.1990).  "First, the dispute must be a 'case or controversy' within the confines of Article III

---

[5] The Estate has titled its third cause of action as "Negligence and Bad Faith."  (Am.
Compl. 11, ECF No. 21.)  To the extent the Estate is alleging a separate cause of action for
negligence against the Erie Defendants, this claim also fails because it is duplicative of the bad
faith claim.  See Skinner v. Horace Mann Ins. Co., 369 F. Supp. 3d 649, 654 (D.S.C. 2019)
(citing Kraemer v. Mass. Mut. Life Ins. Co., No.2:15-cv-04571-CWH, 2017 WL 5635469, at *6
(D.S.C. Apr. 28, 2017) (unpublished), aff'd, 701 F. App'x 268 (4th Cir. Nov. 13, 2017)
(unpublished)).  Accordingly, the negligence cause of action is dismissed as to all defendants for
failure to state a claim.

of the United States Constitution-the 'constitutional' inquiry.  Second, the trial court, in its discretion, must be satisfied that declaratory relief is appropriate-the 'prudential' inquiry."  <u>Id.</u>

"The test for a 'case or controversy,' . . . is whether the dispute 'is definite and concrete, touching the legal relations of parties having adverse legal interests.'"  <u>Id.</u> (quoting <u>Aetna Life Ins. Co. v. Haworth</u>, 300 U.S. 227, 240-41 (1937)).  The court must determine  "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  <u>Id.</u> (quoting <u>Md. Cas. Co. v. Pac. Coal & Oil Co.</u>, 312 U.S. 270, 273 (1941)).

"[O]nly those parties directly involved with the case's controversy should be joined as defendants [in declaratory judgment actions]."  <u>State Farm and Cas. Co. v. Singleton</u>, 774 F. Supp. 2d 773, 777 (D.S.C. 2009) (dismissing a defendant that had "no contractual relationship" with the plaintiff).  As the court has dismissed the breach of contract, negligence, and bad faith claims against The ERIE, EIG, and The Exchange, there is no justiciable controversy entitling the Estate to a declaration against those entities.  <u>See</u> 28 U.S.C. § 2201.  As such, the declaratory judgment claims alleged against The ERIE, EIG, and The Exchange are dismissed.

### B. Dismissal for Lack of Personal Jurisdiction

EIC moves to dismiss for lack of personal jursidcition pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.  When a defendant properly challenges personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff must prove the grounds for jurisdiction by a preponderance of the evidence.  <u>Combs v. Bakker</u>, 886 F.2d 673, 676 (4th Cir. 1989).  When a district court decides a personal jurisdiction challenge without an evidentiary

hearing, however, the plaintiff need show only a prima facie case of personal jurisdiction.  See Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993).  In making this determination, the court may consider "the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint . . . ."  Grayson v. Anderson, 816 F.3d 262, 268 (4th Cir 2016) (citing Combs, 886 F.2d at 676 and Mylan Labs, 2 F.3d at 62).

"In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction."  In re Celotex Corp., 124 F.3d 619, 628 (4th Cir. 1997) (quoting Combs, 886 F.2d at 676).  In order to exercise personal jurisdiction over non-resident defendants, "[f]irst, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and, second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements."  Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001) (citation omitted).

South Carolina's long-arm statute, which includes the power to exercise personal jurisdiction over causes of action arising from tortious injuries in South Carolina, has been construed to extend to the outer limits of the due process clause.  Meyer v. Paschal, 498 S.E.2d 635, 638  (S.C. 1998).  Because South Carolina "treat[s] [its] long-arm statute as coextensive with the due process clause, the sole question becomes whether the exercise of personal jurisdiction in this case would violate the strictures of due process."  Moosally v. W.W. Norton & Co., Inc., 594 S.E.2d 878, 883 (S.C. Ct. App. 2004) (citation omitted)).

12

Thus, the dual jurisdictional requirements collapse into a single inquiry as to whether the defendant has "certain minimum contacts" with the forum, such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal citations omitted). "In giving content to that formulation, the Court has long focused on the nature and extent of the defendant's relationship to the forum State." Ford Motor Co. v. Mont. Eighth Jud. Dist Ct., 141 S. Ct. 1017, 1024 (2021) (citations and internal quotations omitted).

The due process requirements must be met as to each defendant, and thus the court is to assess individually each defendant's contacts with South Carolina. See Rush v. Savchuk, 444 U.S. 320, 331-32 (1980). Further, the focus must center on the contacts generated by the defendant, and not on the unilateral actions of some other entity. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 417 (1984) (holding that "unilateral activity of another party or a third person is not an appropriate consideration"). The United States Supreme Court has "recogniz[ed] two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." Ford Motor Co., 141 S. Ct. at 1024 (citations and quotations omitted).

A court may exercise general personal jurisdiction over a defendant only when that defendant is "essentially at home" in the forum. Id. For a corporate defendant, "at home" will usually mean their place of incorporation and their principal place of business. Id.

To determine whether specific jurisdiction exists, the court must consider "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and

13

(3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'"
Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003)
(quoting ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711-12 (4th Cir.
2002)).  "If, and only if, [the court] find[s] that the plaintiff has satisfied th[e] first prong of the
test for specific jurisdiction need [the court] move on to a consideration of prongs two and
three."  Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009).

For the first element, a defendant has availed itself of the privilege of conducting
business in a state-and thus the benefits and protections of the state's laws-when the defendant
"'deliberately' has engaged in significant activities within a [s]tate" or "has created 'continuing
obligations' between [itself] and residents of the forum."  Burger King Corp. v. Rudzewicz, 471
U.S. 462, 475-76 (1985) (quoting Keeton v. Hustler Mag., Inc., 465 U.S. 770, 781 (1984), and
Travelers Health Ass'n v. Virginia ex rel. State Corp. Comm'n, 339 U.S. 643, 648 (1950)).  This
standard "ensures that a defendant will not be haled into a jurisdiction solely as a result of
random, fortuitous, or attenuated contacts," or due to "the unilateral activity of another party or a
third person."  Id. at 475 (internal citations and quotation marks omitted). .

Further, "[i]t is well established that a single act can support jurisdiction if that act has a
substantial connection with the forum and gives rise to, or figures prominently in, the cause of
action under consideration."  Campbell v. Johnson & Towers, Inc., 123 F. Supp. 2d 329, 335
(D.S.C. 1999) (internal quotation marks omitted); see also Chung v. NANA Development Corp.,
783 F.2d 1124, 1127 (4th Cir. 1986).

For the second element, whether a plaintiff's claims arise out of or relate to a defendant's
activities directed at the state, "there must be 'an affiliation between the forum and the

14

underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" Bristol-Myers, 137 S. Ct. at 1781 (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919(2011)). "When there is no such connection [between the plaintiff's claims and the defendant's contacts with the forum], specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." Id.

For the third element, the court must consider whether the exercise of jurisdiction "would comport with 'fair play and substantial justice.'" Burger King Corp., 471 U.S. at 476 (quoting International Shoe, 326 U.S. at 320). The court examines the constitutional reasonableness of exercising jurisdiction by evaluating several factors, including "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." Nolan, 259 F.3d at 217 (quoting Burger King, 471 U.S. at 477).

"More generally, [the Fourth Circuit's] reasonableness analysis is designed to ensure that jurisdictional rules are not exploited in such a way as to make litigation so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent." Id. (quotations and citations omitted).

### 1. Personal Jurisdiction over EIC

In the amended complaint, the Estate alleges the following with regards to the court's personal jurisdiction over the Erie Defendants:

15

> Erie[6] has availed itself of the jurisdiction of the courts in South Carolina and
> instituted litigation and filed lawsuits in South Carolina within the last five years.
> In filing those suits, it has asserted that it is organized to do business in South
> Carolina and does business in South Carolina. It has further asserted that it is
> authorized to engage in the business of insurance in South Carolina. It has
> engaged in tortious conduct in South Carolina as described below. Erie is subject
> to personal jurisdiction in this State and in this Court.

(Am. Compl. ¶ 6, ECF No. 21.) While these allegations appear to attempt to establish general

personal jurisdiction over the Erie Defendants because they address matters unrelated to the

instant action, the Estate's response in opposition only addresses specific jurisdiction. (Resp.

Opp'n 6, ECF No. 27.) In its response in opposition, the Estate asserts that the court has

specific personal jurisdiction over EIC because it has "purposefully directed numerous activities

at Plaintiff and other South Carolina residents by conducting business in South Carolina and by

aiming tortious activity to South Carolina." (Id. 6, ECF No. 27) (cleaned up).

### a. Purposeful Availment

The Fourth Circuit has identified the following factors a court may consider in assessing

whether a company has purposefully availed itself of a forum state:

> (1) whether the defendant maintained offices or agents in the State; (2) whether
> the defendant maintained property in the State; (3) whether the defendant reached
> into the State to solicit or initiate business; (4) whether the defendant deliberately
> engaged in significant or long-term business activities in the State; (5) whether a
> choice of law clause selects the law of the State; (6) whether the defendant made
> in-person contact with a resident of the State regarding the business relationship;
> (7) whether the relevant contracts required performance of duties in the State; and
> (8) the nature, quality, and extent of the parties' communications about the
> business being transacted.

---

[6] The court notes that the Estate does not attempt to set forth specific allegations
regarding personal jurisdiction over each defendant individually. Instead, the Estate has grouped
together all of the Erie Defendants in setting forth its claims.

16

Sneha Media & Entm't, LLC v. Associated Broad. Co. P. Ltd., 911 F.3d 192, 198-99 (4th Cir. 2018) (citing Consulting Eng'rs Corp., 561 F.3d at 278).

The Fourth Circuit has found that a corporation has purposefully availed itself when it "substantially collaborated with a forum resident and that joint enterprise constituted an integral element of the dispute." Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 302 (4th Cir. 2012). "In contrast, [the Fourth Circuit] ha[s] determined that purposeful availment was lacking in cases in which the locus of the parties' interaction was overwhelmingly abroad." Id.

The Estate specifically argues that EIC has purposefully availed itself in South Carolina because (1) it is a wholly owned subsidiary of The Exchange, a business authorized to transact buisiness in South Carolina, (2) it has been involved in various law suits over the past twenty years in South Carolina, and (3) it issued construction bonds for work to be performed in South Carolina. (Resp. Opp'n 7-11, ECF No. 27.)

In response, the Erie Defendants submitted the affidavit of Cynthia Crosby ("Crosby"), the Assistant to the Corporate Secretary of Erie Indemnity Company. (Mot. Dismiss Ex. C (Crosby Aff. ¶ 1), ECF No. 26-5.) In her affidavit, Crosby states that EIC (1) has never solicited, initiated, directed, or conducted any business activities in South Carolina, (2) "is not and has never been registered to do business in South Carolina and is not a licensed insurer in South Carolina,"[7] (3) "has never had offices or business operations in South Carolina and has

---

[7] The court takes judicial notice that, as of the current list of licensed insurers, dated May 2020, EIC is not authorized to transact business in South Carolina. https://doi.sc.gov/DocumentCenter/View/12815/All-Companies?bidID=. "The Court may take judicial notice sua sponte, or on motion of the parties. Numerous district courts have held that

never directly owned or operated any business incorporated in or with its principal place of business in South Carolina," (4) does not own property in South Carolina, and (5) "does not have offices, affiliates, agents, or employees in South Carolina."  (Id. Ex. C (Crosby Aff. ¶¶ 8-13), ECF No. 26-5.)  The Estate asserts that EIC should be bound by its admission in a verified complaint in a 2015 lawsuit filed in the South Carolina state court wherein it alleged that "Erie Insurance Company, now is and at all times was a corporation authorized to engage in the business of insurance in the State of South Carolina."  (Resp. Opp'n 8, ECF No. 27); (Id. Ex. A (2015 Compl. 5), ECF No. 27-1.)

"'Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact.'"  Barnes v. Owens–Corning Fiberglas Corp., 201 F.3d 815, 829 (6th Cir. 2000) (quoting Am. Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988)).  Judicial admissions are generally binding within the proceeding in which they are made, see Brown v. Tenn. Gas Pipeline Co., 623 F.2d 450, 454 (6th Cir. 1980), but are generally admissible only as non-binding evidence in subsequent actions.  Dixie Sand & Gravel Corp. v. Holland, 255 F.2d 304, 310 (6th Cir. 1958); see also United States v. Williams, C/A No. 06-00079-JMS/KSC, 2014 WL 2436199, at * 6 (D. Haw. May 30, 2014) (unpublished) ("Admissions . . . in one judicial proceeding generally do not constitute binding judicial admission in a different case.") (citing Kohler v. Lesli Hindman, Inc., 80 F.3d 1181, 1185 (7th Cir. 1996)).

---

judicial notice of information contained in state or federal governmental websites is proper." Williams v. Universal Ins. Co., No. 4:13-CV-3518-PMD, 2014 WL 12621154, at *4 (D.S.C. Oct. 9, 2014) (unpublished) (internal citations omitted).

In addition, "a court, unquestionably, has the right to relieve a party of his judicial admission if it appears that the admitted fact is clearly untrue and that the party was laboring under a mistake when he made the admission." New Amsterdam Cas. Co. v. Waller, 323 F.2d 20, 24 (4th Cir. 1963); see also Nat'l Union & Fire Ins. Co. of Pittsburgh, Pa. v. Arioli, 941 F. Supp. 646, 655 (E.D. Mich. 1996) (finding that a court may relieve a party from its admission if it was the result of inadvertence or mistake).

The court finds that the statement made in the verified complaint is "clearly untrue," as it is plainly contradicted by Crosby's affidavit and by the list of insurance companies authorized to transact business in South Carolina contained on the South Carolina Department of Insurance website. EIC is not authorized to conduct business in South Carolina.

This case arises from a motor vehicle accident that occurred in South Carolina and resulted in the death of a South Carolina resident. The accident was caused by Samkharadze, a Georgia resident, who was intoxicated and driving a rental vehicle that he rented in Georgia. The rental vehicle was allegedly covered by an insurance policy issued and delivered in New York by EIC, a Pennsylvania corporation, to Empire, a New York limited liability company. This attenuated, at best, contact only occurred as the result of the unilateral acts of Samkharadze and is insufficient to establish personal jurisdiction over EIC.

"[M]ere injury to a forum resident is not a sufficient connection to the forum . . . The proper question is . . . whether the defendant's conduct connects him to the forum in a meaningful way." Walden v. Fiore, 571 U.S. 277, 290 (2014). It is uncontested that EIC does not maintain offices, own property, or have a registered agent in South Carolina. Other than EIC's affiliation with The Exchange as a wholly-owned subsidiary, there is no allegation that

19

EIC has solicited business in South Carolina.  Issuing an insurance policy providing nationwide coverage is no different than selling a product, such as a vehicle, with a warranty that it is fit for its intended use and with the knowledge that it may be used nationwide.  See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98 (1980) (due process clause forbids the exercise of personal jurisdiction over an out-of-state automobile distributor whose only tie to the forum resulted from a customer's foreseeable decision to drive there).  Jurisdiction is improper in either case.

The amended complaint also attempts to establish personal jurisdiction over EIC based on sporadic lawsuits filed over a period of twenty years wholly unrelated to the Policy in this case.[8]  See (Resp. Opp'n Ex. C (List of Erie Lawsuits), ECF No. 27-3.)  Participation in unrelated litigation is not sufficient to establish that EIC purposefully directed activities to South Carolina.  The Supreme Court noted in Bristol-Myers Squibb Co. v. Super. Ct. of Cal. that for a plaintiff to assert specific jurisdiction over a nonresident defendant, the plaintiff must show "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.  When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."  137 S. Ct. 1773, 1781 (2017) (emphasis added) (citation omitted) (bracket in original).

---

[8] While the Estate alleges that it "believes that Erie Insurance Company has instituted at least 14 lawsuits in . . . South Carolina and has participated in at least 4 other lawsuits as a defendant," the lawsuits specifically addressed by the Estate refer to matters involving the issuance of construction bonds and subrogation.  (Resp. Opp'n 8-9, ECF No. 27.)  These matters are unrelated to commercial automobile insurance policies at issue in the instant action.

Moreover, the court finds the allegations regarding the periodic issuance of construction bonds are insufficient to satisfy the purposeful availment requirement.  As discussed below in addressing the Estate's jurisdictional discovery argument, those bonds were issued in North Carolina to a North Carolina corporation in the early 2000s.  (Reply Ex. A. (Mazzeo Aff. ¶ 3), ECF No. 30-1.)  While EIC acknowledges that some of those bonds were issued for work to be performed in South Carolina, a state where it was not a licensed insurer, EIC enacted procedures to ensure that it would no longer issue bonds in states where it was not a licensed insurer as a result of several lawsuits that were filed.  (Id. Ex. A. (Mazzeo Aff. ¶¶ 4-7), ECF No. 30-1.)  Further, the Estate does not argue that EIC has continued to issue construction bonds for work to be performed in South Carolina.

Accordingly, the court finds that the amended complaint fails to show that EIC has purposefully availed itself in South Carolina based on its involvement in previous lawsuits and the incorrect assertion that it was licensed to conduct business in South Carolina.  The Policy was not sold or negotiated in South Carolina, EIC has not engaged in significant activities in South Carolina, and South Carolina law does not govern the terms of the Policy.  KCHM, Inc. v. Mid-Continent Cas. Co., 264 F. Supp. 3d 697, 702 (E.D.N.C. 2017) (Insurance company did "not reach into North Carolina to sell or negotiate the policy at issue, as it has not engaged in significant activities in North Carolina, and as North Carolina law does not govern the terms of the policy, the Court finds that Mid-Continent's contact with North Carolina is simply insufficient to support this Court having specific personal jurisdiction over it.").

21

**b. Effects Test**

The Estate also argues that the court has specific jurisdiction over EIC under the "effects test" because it "intentionally directed tortious activity to South Carolina."  (Resp. Opp'n 9, ECF No. 27.)  In Calder v. Jones, 465 U.S. 783 (1984), the Supreme Court held that a court may exercise specific personal jurisdiction over a nonresident defendant acting outside of the forum when the defendant has intentionally directed his tortious conduct toward the forum state, knowing that the conduct would cause harm to a forum resident.  Id. at 789-90.

Applying that test to the libel suit before it, the Calder Court held that California possessed jurisdiction over Florida reporters who had written an allegedly libelous article for the National Enquirer about a California actress, because "California [was] the focal point both of the story and of the harm suffered."  Id.  The writers' "actions were expressly aimed at California," the Court said, "[a]nd they knew that the brunt of [the potentially devastating] injury would be felt by [the actress] in the State in which she lives and works and in which the *National Enquirer* has its largest circulation."  Id. at 789-90; see also ESAB Group Inc. v. Centricut, Inc., 126 F.3d 625, 626 (4th Cir. 1997) (emphasizing importance, in light of Calder, of evidence that defendant expressly aimed or directed its conduct toward forum state and noting that business activities focusing "generally on customers located throughout the United States and Canada without focusing on and targeting" forum state cannot establish personal jurisdiction).

Under this "effects test," the Estate must establish that "(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct

22

at the forum, such that the forum can be said to be the focal point of the tortious activity." Consulting Eng'rs v. Geometric Ltd., 561 F.3d 273, 280 (4th Cir. 2009) (citation omitted). The parties dispute whether the Estate's bad faith claim is an intentional tort. (Resp. Opp'n 10, ECF No. 27); (Reply 7, ECF No. 30.)

In South Carolina, bad faith is defined as "a **knowing** failure on the part of the insurer to exercise an honest and informed judgment in processing a claim," and "an insurer acts in bad faith where there is no reasonable basis to support the insurer's decision." Am. Fire & Cas. Co. v. Johnson, 504 S.E.2d 356, 358 (S.C. Ct. App. 1998) (citation omitted) (emphasis added). As previously stated, "[t]he elements of an action for bad faith refusal to pay benefits under an insurance contract include: (1) the existence of a mutually binding contract of insurance between the plaintiff and the defendant; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising on the contract; (4) causing damage to the insured." Generali Ins. Co., 466 S.E.2d at 730. "If there is a reasonable ground for contesting a claim, there is no bad faith." Crossley v. State Farm Mut. Auto. Ins. 415 S.E.2d 393, 397 (S.C. 1992)

The Estate cites to Nichols v. State Farm Mut. Auto. Ins. Co., 306 S.E.2d 616 (S.C. 1983), superceded by statute on other grounds, to support its assertion that bad faith is an intentional tort in South Carolina. (Resp. Opp'n 10-11, ECF No. 27.) The Estate relies entirely, without any further analysis or discussion, on the following sentences from that opinion: "[i]f an insured can demonstrate bad faith or unreasonable action by the insurer in processing a claim under their mutually binding insurance contract, he can recover consequential damages in a tort action. Actual damages are not limited by the contract. Further, if he can demonstrate the insurer's

actions were willful or in **reckless disregard** of the insured's rights, he can recover punitive damages." <u>Nichols</u>, 306 S.E.2d at 619. (emphasis added).  In stating that a plaintiff may recover punitive damages for willful or reckless conduct, the court is acknowledging that something less than intentional conduct can support a finding of bad faith.

Indeed, "[u]nder our view of the bad faith cause of action, above stated, the jury is entitled to consider **negligence** on the issue of unreasonable refusal to pay benefits." <u>Nichols</u>, 306 S.E.2d at 620) (citations omitted) (emphasis added).

Accordingly, the court finds that bad faith is not an intentional tort under South Carolina law.  Therefore, the Estate is unable to satisfy the "effects test" to establish personal jurisdiction over EIC.  Based on the foregoing, Plaintiff has failed to establish a prima facie case of personal jurisdiction over EIC.

### c. Jurisdictional Discovery

The Estate asserts that "[t]he full extent of Erie Insurance Company's business in South Carolina is unknown at this time, given the lack of discovery completed on this issue."  (Resp. Opp'n 8, ECF No. 27.)  Courts may permit jurisdictional discovery "[w]hen the Plaintiff's claim does not appear to be frivolous." <u>Cent. Wesleyan Coll. v. W.R. Grace & Co.</u>, 143 F.R.D. 628, 644 (D.S.C. 1992).  However, "[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." <u>Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.</u>, 334 F.3d 390, 402 (4th Cir. 2003).  "[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials by the defendant, a court may refuse

jurisdictional discovery." <u>Intercarrier Commc'ns, LLC v. Kik Interactive, Inc.</u>, C/A No. 3:12-cv-771, 2013 WL 4061259, at *6 (E.D. Va. Aug. 9, 2013) (unpublished).

      The only evidence proffered by the Estate involves various lawsuits in which EIC has been involved over the past twenty plus years in South Carolina, allegations regarding EIC's issuance of various construction bonds, and vague allegations regarding EIC's relationship with The Exchange. (Resp. Opp'n 8-9, ECF No. 27.) In the Erie Defendants' reply, it attached an affidavit from an EIC Bond Consultant, Edward Mazzeo ("Mazzeo"), wherein he states that EIC began issuing these "performance bonds" to Fountain Electric, Inc. ("Fountain Electric"), a North Carolina corporation "in or around 2001." (Reply Ex. A. (Mazzeo Aff. ¶ 3), ECF No. 30-1.) Mazzeo states that the these bonds were issued "for electrical work performed in North Carolina for a number of years," but at some point thereafter, EIC issued performance bonds to Fountain Electric for work to be performed in South Carolina which resulted in lawsuits being filed in South Carolina state court in 2007 and 2008. (<u>Id.</u> Ex. A. (Mazzeo Aff. ¶¶ 2, 4-5), ECF No. 30-1.)

      As a result of these lawsuits, the South Carolina Department of Insurance informed EIC that they could no longer issue bonds for work to be performed in South Carolina because "EIC was not a licensed insurer in South Carolina." (<u>Id.</u> Ex. A. (Mazzeo Aff. ¶ 6), ECF No. 30-1.) Consequently, Mazzeo asserts that "EIC updated its procedures to ensure that performance bonds were not issued in states where EIC was not licensed and revised its application for performance bonds to specifically advise applicants that EIC could not issue performance bonds in states where it is not licensed." (<u>Id.</u> Ex. A. (Mazzeo Aff. ¶ 7), ECF No. 30-1.)

      In light of Mazzeo's affidavit and Crosby's previously-discussed affidavit, the court finds that the Estate's assertion that "[t]he full extent of Erie Insurance Company's business in South

Carolina is unknown at this time," amounts to nothing more than mere speculation. <u>See</u> <u>McLaughlin v. McPhail</u>, 707 F.2d 800, 806 (4th Cir.1983) (holding that district court did not abuse its discretion in denying jurisdictional discovery when, "[a]gainst the defendants' affidavits," plaintiff "offered 'nothing beyond his bare allegations' that the defendants had significant contacts with the [forum] state"). Accordingly, the court finds that it would not be aided by further discovery on this matter.

### III. CONCLUSION

Based on the foregoing, the court grants the Erie Defendants' motion to dismiss and denies as moot the Erie Defendants' motion to transfer venue.

It is therefore

**ORDERED** that Defendants' motion to dismiss or transfer, docket number 26, is granted in part and denied in part. All claims against The ERIE, Erie Insurance Group, and Erie Insurance Exchange are dismissed for failure to state a claim. Erie Insurance Company is dismissed for lack of personal jurisdiction. The motion to transfer venue is denied as moot.

**IT IS SO ORDERED.**


                                                  Henry M. Herlong, Jr.
                                                  Senior United States District Judge

Greenville, South Carolina
July 14, 2022